371 So.2d 742 (1979)
Milford L. FRYAR
v.
William F. GUSTE, Jr.
Nos. 63149, 63166.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.[*]
*743 Frank M. Coates, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, for plaintiff-applicant in No. 63149 and for plaintiff-respondent in No. 63166.
William J. Guste, Jr., Atty. Gen., Ellis C. Magee, Executive Asst. Atty. Gen., Kenneth C. DeJean, Thomas S. Halligan, Asst. Attys. Gen., John DiGiulio, Staff Atty., Baton Rouge, for defendant-respondent in No. 63149 and defendant-applicant in No. 63166.
BLANCHE, Justice.
Plaintiff and defendant both complain of error in the Court of Appeal decision reversing the trial court's dismissal of this suit and holding that certain of the files in the Attorney General's office are public records subject to examination by the plaintiff, a person qualified to inspect such records under the Public Records Act.
Plaintiff, Milford L. Fryar, a reporter for Capital City Press, sought access to records in the custody of the office of defendant, the Attorney General of Louisiana. Plaintiff claimed a right to inspect under authority of the Public Records Act, LSA-R.S. 44:1, et seq. The records consist of files containing interviews conducted by staff members of the Attorney General's office for the purpose of investigating alleged irregularities involving the Ascension Parish Police Jury.
In the spring of 1976 a Grand Jury in Ascension Parish was investigating the alleged irregularities. In late March, the District Attorney requested assistance from the Attorney General's office. Several Department *744 of Justice staff members went to Ascension Parish and conducted interviews of eleven persons; reports of the interviews were furnished to parish authorities. No charges were brought by either the Grand Jury or the District Attorney, and the Grand Jury investigation in the parish was ended by mid-April of 1976.
In May of 1976 some citizens of the parish met with the Attorney General and requested that there be a further investigation. As a result of this meeting, the Attorney General's staff once again interviewed persons in Ascension Parish. In all, fifty-two people were interviewed, some more than once. Some of those interviewed were persons who had been interviewed previously. Some had testified before the Grand Jury. Fourteen of those interviewed, who showed a reluctance to talk freely, were assured that any information they gave would remain confidential except for necessary appearances to testify in court or before another Grand Jury. Glenwood L. Bullard, an investigator for the Louisiana Department of Justice, testified that if a person were reluctant to be interviewed, he would be assured that his information would be held in strictest confidence and that there was a specific state law which prohibited making this information available to anyone. However, if the person were willing to talk and expressed no reservations, no such assurances were given. Only fourteen were assured of confidentiality. Bullard also testified that nothing in the files would indicate to which persons this assurance was given, though he himself does know. These interviews were concluded in February of 1977, and the following month the reports were furnished to the District Attorney in Ascension Parish. He stated that since nothing new was disclosed by this investigation he considered the matter to be closed.
The district court denied plaintiff permission to view the files on two bases:
(1) That LSA-C.Cr.P. art. 434 requires persons having confidential access to information concerning grand jury proceedings to keep secret the testimony of witnesses appearing before the grand jury and all other matters occurring at or directly connected with the meeting of the grand jury;
(2) That much of the information contained in the report of the Attorney General was derived from confidential sources of information and was privileged under the provisions of LSA-R.S. 44:3(A)(2).
The Court of Appeal, First Circuit, reversed and remanded with instructions. As to the eleven persons who testified or were interviewed during the Grand Jury investigation, the Court held their identities and testimony must remain confidential under Louisiana Code of Criminal Procedure Article 434. As to the fourteen persons to whom an assurance of confidentiality was given, the Court found them to be confidential sources of information under R.S. 44:3(A)(2); however, the Court noted that the Attorney General cannot designate a person as a confidential source when that person gives information willingly. The Court found that the records pertaining to the other interviews are subject to scrutiny under the Public Records Act. The trial judge was ordered to make an In-camera examination of the Attorney General's files and to conduct necessary hearings in order to remove from the files those portions which must remain confidential; then plaintiff would be permitted to inspect and copy the remainder of the material in the files.
The Attorney General complains of the decision and claims that all of the investigation was directly connected with the original Grand Jury investigation, that the records must remain confidential under Louisiana Code of Criminal Procedure Article 434, and that all of those interviewed are confidential sources of information who must be protected under R.S. 44:3.
Plaintiff complains of the decision and claims a right to inspect all files containing information not part of the actual testimony before the Grand Jury; included in this claimed right to inspect are those reports which the Attorney General agreed to keep *745 confidential, since plaintiff claims the persons interviewed are not, in fact, confidential sources of information to whom R.S. 44:3 is designed to apply.
This Court granted writs.
The Court of Appeal was clearly correct in ruling that the interviews with the eleven persons conducted prior to adjournment of the Grand Jury were a part of the Grand Jury investigation and all matters connected therewith must remain confidential. LSA-C.Cr.P. art. 434.
From our reading of the record, we find that the Court of Appeal was correct in finding that interviews conducted after adjournment of the Grand Jury in April, 1976, were separate from the Grand Jury investigation and resulted from the urging of Ascension Parish citizens. For this reason, the interviews are not subject to the confidentiality requirement of Code of Criminal Procedure Article 434, nor are the interviews subject to the blanket exceptions to the public's right to inspect contained in R.S. 44:3. The Grand Jury investigation had terminated; the investigation by the District Attorney had terminated; no prosecution had resulted or would result from the information gathered by the Department of Justice. The District Attorney regarded the matter as closed.
The only issue which prompted the granting of this writ was the propriety of shielding the interviews of fourteen persons to whom it was claimed that a promise of confidentiality was given by investigators for the Department of Justice.
The Public Records Act, LSA-R.S. 44:1, et seq., provides for public access to information concerning state government as it is conducted through its many agencies. It is a product of Article 12, § 3 of the Louisiana Constitution of 1974 which sets forth the public policy with regard to public records of state bodies as follows:
"No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." The act did make certain exceptions to the constitutional mandate and excluded from disclosure certain records as follows:
"A. Nothing in this Chapter shall be construed to require disclosure of records, or the information contained therein, held by the offices of the attorney general,. . . which records are:
. . . . .
"(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information. . .
. . . . .
"B. All records, files, documents, and communications, and information contained therein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or departments mentioned in Paragraph A above, shall be privileged . . . ." (Emphasis supplied)
From the foregoing language, it is clear that all records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information are excluded from disclosure. We have no thought of weakening any protection afforded by the statute to confidential informants, because we believe that without this assurance very few persons, if any, would come forth with information concerning the commission of covert crimes.
With regard to this issue, the testimony of Bullard, one of the Attorney General's investigators, is as follows:
"Q. All right. On these interview forms, do you indicate one way or the other whether you have promised the person interviewed that his identity will be kept secret?
"A. No, sir, this is not a confidential informant; this is a confidential source.
"Q. I see. Well, you didn't promise any of them that their identity would be kept secret? *746 "A. I advised them the information they provided me would be held in the strictest of confidence until such time as it was required by an official board of inquiry.
"Q. Only the information?

"A. The information, yes, sir.

"Q. All right. And that's all you promised?

"A. Yes, sir." (Emphasis supplied)
From the foregoing, it must be concluded that the identity of the person giving the information was not given under a promise of confidentiality. The only promise was that which related to the information and as to this information, it would only be held in confidence until such time as it was required by an official board of inquiry. Thus, we find that the Court of Appeal was in error in concluding as to these persons that a promise not to disclose their identity was a condition under which they were willing to give information.
We, therefore, believe that the defendant has not demonstrated that any of the fourteen reports referred to above were given on a promise that the identity of the person making the same was on the basis that his identity would be kept confidential and, accordingly, order the inspection of these reports.
Finally, we feel compelled to make the further observation that access to such reports may not be blocked by a simple statement from one of the investigators that persons furnishing information were assured of confidentiality. To permit such actions by the Attorney General or any other official would be, in effect, to allow bureaucratic procedures to abrogate the intent and purpose of the Public Records Act. We repeat that the act protects the identity of the confidential informant. We define a "confidential informant" as one who has or claims to have knowledge of a particular criminal matter or event and is only willing to give such information to representatives of a law enforcement agency provided his identity is kept secret or in confidence.
For these reasons, we affirm the opinion of the Court of Appeal in all respects, except as to that portion of its judgment prohibiting plaintiff, Milford L. Fryar, from inspecting or copying from the statements of fourteen witnesses whom the Court of Appeal found had testified in confidence; and as to these witnesses, the Court of Appeal judgment is reversed and the trial court is ordered to permit inspection and copying of and from these statements by the said plaintiff, Milford L. Fryar. Defendant shall pay all costs for which he may be liable under the law.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[*] Summers, C. J., would grant a rehearing.