GUIDRY, J.
12An attorney representing a defendant challenging his conviction in postconviction relief proceedings appeals a judgment denying her petition for issuance of a writ of mandamus seeking the release of un-re-dacted copies of documents requested pursuant to the Louisiana Public Records Law.
FACTS•
On March 10, 2014, Emily Posner submitted a 'public records request to the Criminal Records Division of the East Baton Rouge Parish Sheriffs Office to obtain' initial criminal reports from the investigation of the murder of Marshall Bond in Zachary, Louisiana on August 15, 1973. Ms. Posner later filed a suppleméntal request, on June 30, 2014, for un-redacted copies of the information provided in response to her original request. In response to Ms. Posner’s supplemental request, counsel for Sid Gautreaux, III, the sheriff of East Baton Rouge Parish, advised Ms. Posner that un-redacted copies of a portion of the information requested would be provided, but that the sheriff would not provide un-redacted copies of any information labeled “confidential.”
Following receipt of un-redacted copies of a portion of the information originally requested on March 10, 2014, Ms. Posner submitted a second request for the release of the remaining documents without redac-tions. . Citing La. R.S. 44:3(A)(2), the sheriff denied Ms. Posner’s request to release the remainder of the documents requested without redactions. Thereafter, on March 31, 2015, Ms. Posner filed a “Petition for Writ of Mandamus under the Louisiana Public Records Act” against Sheriff Gau-treaux “to enforce her rights under the Louisiana Public Records Act ... and receive complete, unredacted records from the East Baton Rouge Parish Sheriffs Office custodian of records.” A hearing on this matter was held on May 11, 2015, following which the trial court found that La. R.S. 44:3(A)(2) applied to | athe records requested by Ms. Posner and denied her *122 request for issuance of a writ of mandamus. Ms. Posner devolutively appeals that ruling.
DISCUSSION
Under Louisiana law, the right of the public to access public records is a fundamental right protected by the constitution and by statute. State v. Mart, 96-1584, p. 6 (La.App, 1st Cir.6/20/97), 697 So.2d 1055, 1059, overruled, in part on other grounds by In re Matter Under Investigation, 07-1853 (La.7/1/09), 15 So.3d 972. Section 3 of Article XII of the Louisiana Constitution provides “[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law.” Further, La, R,S. 44:4.1(A) of the Louisiana Public Records Law provides:
The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people’s awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided 'for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.
Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to see; to allow otherwise would be an improper and arbitrary restriction on the public’s constitutional rights. Shane v. Parish of Jefferson. 14-2225, pp. 9-10 (La.12/8/15), — So.3d-,-, 2015 WL 8225830, at *5. The burden'is on the party seeking to prevent disclosure to prove that withholding of a public record is justified. Because the right of access to public records is fundamental, access-to public records may be denied only when the law specifically and unequivocally denies access. Hilliard v. Litchfield, 01-1987, p. 4 (La.App. 1st Cir.6/21/02), 822 So.2d 743, 746. The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian. La. R.S. 44:31(B)(3); Hilliard, 01-1987 at p. 4, 822 So.2d at 745. As with Article XII, Section 3 of the Louisiana Constitution, the Public Records Law, La. R.S. 44:1-67.2, should be construed liberally in favor of free and unrestricted access to public documents. Shane, 14-2225 at p. 9, — So.3d at -, 2015 WL 8225830, at *5.
It is undisputed that the redacted documents at issue in this appeal are public records. See La. R.S. 44:3(A)(4)(a). Yet, in denying Ms. Posner complete access to the public records she requests, ie., in redacting various names from the requested documents,[1] the sheriff cites La. R.S. 44:3(A)(2) as authority for the actions of his office. That statute provides:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly *123 owned water districts of the state, which records are: ’
[[Image here]]
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information.
Additionally, La. R.S. 44:3(B) further provides:
All records, files, documents, and communications, and information contained therein, pertaining to or tending to impart the identity of any confidential source of information of any of the state officers, agencies, or departments mentioned in Paragraph A above, shall be privileged, and no court shall order the disclosure of same except on grounds of due process or constitutional law. No officer or employee of any of the officers, agencies, or departments mentioned in Paragraph A above shall disclose said privileged information or produce said privileged records, files, documents, or communications, except on a court order as provided above or ■with the written consent of the chief officer of the agency or department where he is employed or in which he holds office, and to this end said officer or employee shall be immune from contempt of court and from any and all other criminal penalties for compliance with this paragraph. [Emphasis added.]
| (¡Louisiana has a strong public policy in favor of protecting the identity of confidential informants. This privilege is founded upon public policy and seeks to further and protect the public interest and law.enforcement by encouraging people to supply information to the police by protecting their anonymity. State v. Ramsey, 10-333, p. 8 (La.App. 5th Cir.1/25/11), 60 So.3d 36, 41. In Fryar v. Guste, 371 So.2d 742, 745 (La.1979), the Louisiana Supreme Court acknowledged that “[w]e- have no thought of ■ weakening any protection -afforded by [La. R.S: 44:3(A)(2) ] to confidential informants,,because we believe that without this assurance: very few persons, if any, would come forth with information concerning the commission of covert crimes.”
Balancing the public’s right to know against the protections afforded confidential informants, the court in Fryar provided some guidance regarding the conditions under which the exception- for confidential sources found in La. R.S. 44:3 is properly invoked. First, the court defined a “confidential informant” “as one who has or claims to have knowledge of a particular criminal matter or event and is- only willing to give such information to representatives of a law enforcement agency provided his identity is kept secret' of in confidence.” Second, the court held that there must be a showing thát the information was given on a promise that the identity of the person providing the information would be kept confidential. And finally, the court held that access to what otherwise would be public records “may not be blocked by a simple statement from one of the investigators that persons furnishing information were assured of confidentiality. To permit such actions by ..; any ... ■ official would be, in effect, to allow bureaucratic procedures to abrogate the intent and purpose of the Public Records Act.” Fryar, 371 So.2d at 746.
To meet his burden as the custodian of the records sought, the sheriff presented the testimony of Todd Morris, captain and commander of the Homicide Division of the Violent Crimes Unit of the East Baton Rouge Parish Sheriffs Office. | (¡Captain Morris indicated that when he prepares a report associated with the interview of a confidential source of information, he expects those names to remain protected and *124 confidential. He further indicated that the individuals interviewed expect their identity to be kept confidential as well.
Captain Morris also testified that he had reviewed the specific recórds requested by Ms. Posner. On being questioned about a specific report from those records that was presented to him on direct examination, he opined that the report was “confidential” because it was marked as such and two sentences in the report made reference to the confidentiality of the individual referenced in the report.[2] He further testified from his perspective as a homicide detective that the confidential designation on the report meant that the identity of the individual providing the information contained in the report be kept confidential. And as for other reports contained among the specific records requested by Ms. Pos-ner that were also marked confidential, Captain Morris opined that the confidential designation on those reports meant that the information in the report be kept confidential.
On cross examination, Captain Morris testified that he first began working for the East Baton Rouge Parish Sheriffs Office in 1984, more than ten years after the reports sought by Ms. Posner had been written. He admitted that he did not participate in any of the investigations or interview any of the witnesses for the reports contained in the records sought by Ms. Posner. He stated that a confidential source of information “may or may not be” someone who asks that his or her identity be protected. When questioned further about the specific report that he had testified about on direct examination, he admitted that he was not sure in what “context” the term “confidential” was being used in the report, because he did not write the report. 17However, he maintained his belief that the witnesses providing the information contained in the requested records would want the information and their identity kept confidential.
So whát we are called on to determine in this ease is whether the testimony by Captain Morris, regarding the practices of the sheriffs office, is sufficient to meet the sheriffs burden of proving that the information sought should not be disclosed pursuant to La. R.S. 44:3(A)(2).
In a majority of the reports marked confidential, we cannot discern any indication that the interviewee requested that his or her identity be kept confidential, although in one of the confidential-marked reports, the interviewee does indicate a desire that the information conveyed be kept confidential.[3] The interviews that are the subject of the-reports sought pursuant to Ms. Posner’s public records, request took place, between August 15, 1973 through February 5, 1975, years prior to the Fryar decision, which was rendered in 1979.
In Fryar, the attorney general’s office unilaterally declared certain interviews to be confidential sources of information to be protected pursuant to La. R.S. 44:3. See Fryar, 371 So.2d at 744. At a hearing, the investigator for the Attorney General’s office who had conducted the interviews at *125 issue revealed that he had advised the interviewees that “the information they provided ... would be held in the strictest of confidence until such time as it was required by an official board of inquiry.” Fryar, 371 So.2d at 746. Notably, there was no promise to keep the interviewee’s identity confidential and no indication that the promise was solicited by the interviewee. Hence, the court in' Fryar held that “access to such reports may not be blocked by a simple statement from one of the investigators that persons |sfurnishing information were assured of confidentiality.” Instead, the court held that to be deemed a confidential informant, there must be a showing that the person “is only willing to give such information to representatives of a law enforcement agency provided his identity is kept secret or in confidence.” Fryar, 371 So.2d at 746.
The Louisiana Fifth Circuit Court of Appeal had an occasion to apply the Fryar holding in Hill v. Mamoulides, 482 So.2d 26 (La.App. 6th Cir.1986). In that case, an officer with the Louisiana State Police testified that in the course of investigating the criminal complaints at issue, he interviewed a confidential informant who “would not come forward with information unless he was assured his identity could be kept secret.” Hill, 482 So.2d at 27. In affirming the trial court’s ruling that the records of the state police officer’s investigation were privileged and not subject to disclosure, the appellate court explained:
We find no merit in appellant’s argument that Sergeant Wong’s uncorroborated testimony was insufficient proof the informant would otherwise have refused to disclose the information. The trial judge believed Sergeant Wong and we find no reason to overturn that credibility finding. The statement in the Fryar case that “access to such reports may not be blocked by a simple statement from one of the investigators that persons furnishing information were assured of confidentiality” is inapposite under the facts here, because Sergeant Wong affirmatively testified he had promised to keep the informant’s identity confidential.
Hill, 482 So.2d at 28-29.
Considering the evidence presented, including Captain Morris’s testimony, we find that the sheriff did not meet his burden of proving that the evidence in the instant matter is privileged and therefore not subject to' disclosure pursuant to La. R.S. 44:3(A)(2). While Captain Morris testified that departmental policy provides that if a report is marked confidential that means the information contained in the report, including the name of the person providing the information, is to be kept confidential, he never testified that the designation is made pursuant to the express Iflrequest of the informant to keep hifc or her identity confidential. Nor do we discern any such request from the redacted reports in the record before us.
The jurisprudence establishes that there must be some showing that in providing information, the informant requested that his or her identity be kept secret or confidential and such a showing may even be made by the law enforcement agency asserting the privilege. See Hill, 482 So.2d at 28-29. However, short of such' a showing, information otherwise designated as confidential by a law enforcement agency is not entitled to invoke the privilege provided under La. R.S. 44:3(A)(2) for nondisclosure. Hence, we find the trial court erred in denying Ms. Posner complete and un-redacted access to the records she requested.
CONCLUSION
For the foregoing reasons, we find the trial court erred in holding that the rec *126 ords custodian in this matter, Sheriff Gau-treaux,-met his burden of proving that the records requested by Ms, Posner are privileged and not subject to disclosure pursuant to La. R.S. 44:3(A)(2),' -In so finding, we reverse the judgment of the trial court and Sheriff Gautreaux is ordered to produce un-redacted copies of the documents requested by 3Vts. Posner. The cost of this appeal’ is to be borne by the appellee, Sheriff Gautreaux, in his official'capacity, in the amount of $1,715.50,
REVERSED AND RENDERED.
HOLDRIDGE, J., concurs.

. The sheriff also cited La, R.S, 44:32(B) as authority for redacting the records, which provides: "If any record contains material which is not á public record, the custodian may separate the nonpublic record and make the public record available for examination,”

. The trial court overruled Ms. Posner’s objection to Captain Morris offering opinion testimony and allowed Captain Morris to testify about departmental procedures regarding confidentiality from the perspective of the sheriffs office.

. The record before us contains two sets of exhibits labeled "Exhibit 3” and "Exhibit 4,” which contain practically all of the same documents. However, the notable difference be-tweén the two documents is that in Exhibit 4, redaction of names is limited expressly to those documents marked confidential, whereas names throughout Exhibit 3 are redacted, whether marked confidential or not.