STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0176

CARL J. KRIELOW

VERSUS

LOUISIANA STATE UNIVERSITY BOARD OF SUPERVISORS,
F. KING ALEXANDER, PRESIDENT OF LOUISIANA STATE
UNIVERSITY, ET AL

*Judgment Rendered:*   NOV 1 5 2019

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C659594

The Honorable Wilson E. Fields, Judge Presiding

* * * * * * * *

Amy Groves Lowe
Baton Rouge, Louisiana

Counsel for Defendants/Appellants
Louisiana State University Board of
Supervisors and F. King Alexander

Larry S. Bankston
Jenna H. Linn
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellee
Carl J. Krielow

* * * * * * * *

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

McDonald, J. Concurs

**THERIOT, J.**

In this suit arising from a public records request, defendants, the Louisiana State University Board of Supervisors ("LSU") and F. King Alexander, individually and in his capacity as the President of LSU, appeal a trial court judgment awarding attorney fees and costs under La. R.S. 44:35(D)(1). For the reasons set forth herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 17, 2017, Carl J. Krielow submitted a public records request in accordance with the Public Records Law, La. R.S. 44:1 *et seq.*, to Wade Baumgartner, Director of Sponsored Programs and Intellectual Property for the LSU AgCenter, requesting the opportunity to review and copy, or to receive an electronic copy of, documents related to the transfer of certain rice technology developed by the LSU Rice Research Facility and its employees, to third parties.[1] The requested documents allegedly contained information that is subject to a Licensing Agreement between LSU and BASF Corporation. Specifically, Krielow requested:

> [A] copy of all documents, contracts, contract amendments, agreements, royalty and licensing payments and distributions by and between the LSU System, LSU Agriculture Center, BASF Chemical, Horizon Ag., Dr. Tim Croughan, Dr. Steve Linscombe and the Louisiana Rice Research Board related to the rice technology referred to as CLEARFIELD . . . for the period of <u>October 1, 2014</u> through the date of production of this request.

> [A] copy of all documents, contracts, contract amendments, agreements, royalty and licensing payments and distributions by and between the LSU System, LSU Agriculture Center, BASF Chemical, Horizon Ag., Dr. Steve Linscombe and any other employees or former employees of LSU that share or participate in the royalty of the rice technology referred to as PROVISIA.

> With regards to the technology referred to as PROVISIA, I would request all agreements by and between the Louisiana Rice Research Board, LSU, BASF, Horizon Ag and any other sources as to the budgets and cost of development and any dollar amounts paid by any

---

[1] The requested public records related to two separate rice technologies, known as Clearfield and Provisia.

of these entities for the development of the PROVISIA [TECHNOLOGY].

Counsel for LSU responded to Krielow two days later, on April 19, 2017, advising that the Clearfield records should be available in approximately two weeks, but that the Provisia records would be more challenging and LSU would keep Krielow updated. Based on LSU's belief that certain information contained in the records was exempt from disclosure pursuant to La. R.S. 44:4(16)(a), as well as its obligations under its licensing agreement with BASF, LSU sought BASF's assistance in "identifying those portions of the responsive records in LSU's custody that might qualify under Louisiana law for redaction" prior to production of the records sought by Krielow. Counsel for LSU sent counsel for BASF the text of Public Records Law exemptions that might be applicable to the records, and BASF returned redacted documents to LSU. LSU later forwarded the redacted records to Krielow on May 8, 2017. While counsel for LSU admitted that he did not review the unredacted documents prior to their redaction by BASF, so he had no idea what had been removed, he explained that he had "cautioned BASF that by law the exemptions were to be construed narrowly and therefore BASF should take care not to get too aggressive in making redactions and thereby invite unwelcome suit."

Krielow strongly objected to heavy redaction and material alteration of the Clearfield documents produced. Krielow notified Baumgartner in writing on May 9, 2017 that these Clearfield documents were non-responsive to his request and did not satisfy the custodian's obligation under the Public Records Law. Krielow advised that "[t]he arbitrary redaction of information in these public records is so extensive that it is a denial of my right to review the complete public records for which I made request." Further, with regard to the requested Provisia documents,

3

Krielow again requested an opportunity to view, inspect, and copy the records, and asked for a written explanation for any withheld or redacted documents.

On May 19, 2017, counsel for LSU produced two documents in response to the Provisia public records request. Krielow responded in writing on May 22, 2017, expressing his dissatisfaction with this production, which he stated was "grossly unresponsive to [his] request" and "nothing short of a veiled attempt to frustrate [his] rights to procure public information and public documents." Krielow again requested an opportunity to view, inspect, and copy all of the requested Provisia records, along with a written explanation for any withheld or redacted documents. In the same correspondence, Krielow made a new public records request for additional Provisia records, including electronic correspondence.

Counsel for LSU responded to Krielow on May 24, 2017, advising that Baumgartner would have a supplemental search performed for any further records that may be responsive to the Provisia request. However, with regard to the new public records request included in the May 22, 2017 letter, counsel for LSU responded that the new request, as written, "entails any emails and is unrestricted by sender, recipient, or dates," and while potentially responsive emails are stored in electronic archives at LSU, "segregating these emails and reviewing them for potentially required redaction would be 'unreasonably burdensome or expensive.' See La. R.S. 44:33A(2)." As for the remainder of the Provisia records Krielow requested in his May 22, 2017 letter, counsel for LSU informed him that "some additional records exist and . . . once gathered and reviewed, you can expect to receive them[;] [h]owever, some of the records that may be found may have to be redacted."

On June 2, 2017, LSU produced nine additional Provisia records. Krielow agreed to narrow his request for Provisia emails to include fewer senders/recipients

4

and dates. Thereafter, on June 7, 2017, counsel for LSU notified Krielow that the narrowed search for Provisia emails had returned 7,000 pages, which would have to be printed out for review and redaction because the extra time required to review the documents onscreen would make the required segregation and redaction unreasonably burdensome and expensive under La. R.S. 44:33(A)(2). As such, LSU demanded that Krielow prepay LSU's copy charges of $1,750.00 before the legal review for the required segregation and redaction could begin, although counsel for LSU cautioned that the resulting production to Krielow may be substantially fewer than 7,000 pages due to the duplication that invariably occurs with each new link in an email chain. As an alternative to prepayment of $1,750.00 in copying fees for what may end up being substantially fewer than 7,000 pages of records, counsel for LSU suggested that Krielow consider narrowing his request further to capture fewer potentially responsive records.

On July 17, 2017, Krielow filed a Petition for Alternative Writ of Mandamus, Attorneys' Fees, and Costs under La. R.S. 44:35, naming LSU and F. King Alexander, individually and in his capacity as the President of LSU, as defendants.[2] Krielow alleged that the defendants willfully and knowingly failed or refused to comply with their constitutional and statutory duties to provide him with full and complete copies of the public records sought, without unwarranted redactions, alterations, or modifications, and substantially defeated his constitutional and statutory right to access the public records. Krielow further alleged that the defendants acted arbitrarily, capriciously, and unreasonably by redacting, altering, modifying, and withholding the documents covered by his public records request and by failing to produce true and correct copies of these

---

[2] William B. Richardson, individually and in his capacity as Vice President for Agriculture, Chancellor of the LSU Ag Center, and Dean of the College of Agriculture, and William Baumgartner, individually and in his capacity as Director of Sponsored Programs and Intellectual Property, were also named defendants in the suit. However, they were ultimately dismissed from the suit with prejudice.

documents without unwarranted redaction, alteration, or modification. Krielow sought a writ of mandamus, directing the defendants to produce all of the public records sought without unwarranted redactions, alterations, or modifications, as well as statutory attorney fees and costs in accordance with La. R.S. 44:35(D) & (E)(1).

On August 23, 2017, the parties agreed to a case management schedule, pursuant to which defendants would produce hard copies of the Provisia documents and Krielow would prepay $1,700.00 for the cost of the copies. Deadlines were established for Krielow to file objections to any redactions and for the defendants to provide the reasoning therefor. Further, the defendants agreed to supply the trial court with unredacted copies of all documents for *in camera* inspection to determine whether the redactions were appropriate under the Public Records Law.

Due to the large volume of documents subject to the public records request, the trial court appointed a Special Master pursuant to La. R.S. 13:4165 to review the unredacted documents along with the defendants' redactions and to make "a determination as to the appropriateness and legality of the segregation and redaction of the documents in dispute." Pursuant to the trial court's order, each party deposited $5,000.00 into the registry of the court for the compensation of the Special Master, which would be taxed as costs of court.

The Special Master issued his report and recommendations on February 20, 2018, recommending that the writ of mandamus be granted in part and denied in part. Based on his *in camera* inspection of the unredacted documents, the Special Master concluded that some of the documents and materials requested by Krielow, and segregated or redacted by LSU, should have been produced. The Special Master determined that LSU correctly applied La. R.S. 44:4(16) in responding to Krielow's request and acted legally when it gave BASF the opportunity to review,

6

redact, and segregate records BASF considered trade secrets. The Special Master went on to state that, based on his review, LSU did not arbitrarily or capriciously withhold requested records, nor did it act unreasonably in the manner in which it segregated or redacted records. Finally, the Special Master made a number of other "preliminary legal recommendations" to the trial court, based on its review of the record and the materials produced for *in camera* inspection, including that LSU refund Krielow the $1,700.00 paid prior to LSU's redaction and segregation of records and pay all costs related to the appointment of the Special Master. Despite this recommendation, the Special Master recommended that "neither [Krielow] nor LSU should be cast in judgment for attorney's fees or costs; rather, each party should bear its own costs." The Special Master noted his conclusion that Krielow's public records request was a valid, good-faith request and was not unreasonable or unduly burdensome to LSU and explained that he recommended LSU bear certain costs because:

> [W]hile LSU's conscientious counsel conducted a reasonable and good-faith search, review, production, segregation, and redaction of thousands of pages of potentially relevant records, in a reasonable time, this time and expense was necessitated, in part, by LSU's decision to rely on La. R.S. [44:4(16)(A)] and to not require BASF to follow La. R.S. 44:3.2 and predesignate its documents as confidential or trade secret documents.[3] While LSU had the legal option to rely on the more specific statute and its own policies and not require pre-designation of BASF's documents as confidential or trade secret documents, particularly when those documents in some instances were plainly "trade secret" documents within the meaning of the law and could have been pre-designated as such by BASF, LSU should not now be heard to complain the subject search, segregation, and redaction of these now-public documents was unreasonably burdensome, nor should it be heard to complain, in light of the strong public policy in favor of public access to state records, that it must bear plaintiff's share of the cost of the judicial review of documents it

---

[3] Louisiana Revised Statutes 44:3.2(D)(1) provides:
All records containing proprietary or trade secret information submitted by a developer, owner, or manufacturer to a public body pursuant to Subsection A, B, or C of this Section shall contain a cover sheet that provides in bold type "DOCUMENT CONTAINS CONFIDENTIAL PROPRIETARY OR TRADE SECRET INFORMATION". The developer, owner, or manufacturer shall clearly mark each instance of information which is, in his opinion, proprietary or trade secret information. However, the determination of whether such information is in fact proprietary or trade secret information shall be made by the custodian within thirty days of a submission; however, if a custodian receives a public records request during the period of thirty days, the determination shall be made within the time period provided in R.S. 44:32(D) and 33(B).

chose to exempt from disclosure under the Public Records Law after plaintiff's public records request.

On February 23, 2018, the trial court held a contradictory hearing on the Special Master's report and recommendations, and counsel for the parties reached an agreement as to all but two documents. Thereafter, the trial court adopted the recommendation of the Special Master regarding "the discoverability of the documents held by the Defendants, including the two aforementioned documents[;]" however, the trial court rejected the recommendations of the Special Master regarding "matters that fall outside of the Public Records request, i.e., exceptions, casting costs, etc."[4]

Krielow filed a motion for attorney fees and costs under La. R.S. 44:35(D), alleging that he had prevailed, at least in part, in his public records suit. Following a hearing on Krielow's motion, the trial court awarded the total amount of attorney fees requested by Krielow, $26,070.00, plus costs of $2,045.00 and reimbursement of the $5,000.00 Krielow deposited in the registry of the court for the Special Master's fee. Although the defendants argued that attorney fees and costs should not be awarded because the majority of the erroneous redactions were made by BASF (not LSU), the trial court explained that it was awarding the full amount of attorney fees because "the plaintiff had to go through these proceedings in order to get those documents."

LSU and Alexander appealed, arguing that the trial court erred in requiring LSU to produce documents that were unduly burdensome and expensive, in violation of La. R.S. 44:33(A)(2); in awarding attorney fees and costs under La. R.S. 44:35; and in awarding an unreasonable amount of attorney fees and costs.

---

[4] The trial court noted that the Special Master exceeded his authority in giving a recommendation on anything beyond a determination of "what should be redacted and what should be turned over."

## DISCUSSION

Under Louisiana law, the right to access public records is a fundamental right protected by the constitution and by statute. *Posner v. Gautreaux*, 2015-1196, p. 3 (La.App. 1 Cir. 3/3/16), 192 So.3d 120, 122. The Louisiana Constitution provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." La. Const. Art. XII, §3. The legislature, in the Public Records Law, La. R.S. 44:1, *et seq.*, sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records that the laws deem to be public. There was no intent on the part of the legislature to qualify, in any way, the right of access. *Stevens v. St. Tammany Parish Government*, 2017-0959, pp. 4-5 (La.App. 1 Cir. 7/18/18), 264 So.3d 456, 461, *writ denied*, 2018-2062 (La. 2/18/19), 265 So.3d 773. To that end, La. R.S. 44:4.1(A) provides:

> The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect.

Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see; to allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. *Shane v. Parish of Jefferson*, 2014-2225, pp. 9-10 (La. 12/8/15), 209 So.3d 726, 735; *In re Matter Under Investigation*, 2007-1853, p. 25 (La. 7/1/09), 15 So.3d 972, 989. Because the right of access to public records is fundamental, access to public records may be denied only when the law specifically and unequivocally denies access. *Hilliard v. Litchfield*, 2001-1987, p.

9

4 (La.App. 1 Cir. 6/21/02), 822 So.2d 743, 746. The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.[5] La. R.S. 44:31(B)(3); *Hilliard*, 2001-1987 at p. 4, 822 So.2d at 745. As with Article XII, Section 3 of the Louisiana Constitution, the Louisiana Public Records Law should be construed liberally in favor of free and unrestricted access to public documents. *Shane*, 2014-2225 at p. 9, 209 So.3d at 735.

"Public records" are defined in La. R.S. 44:1(A)(2)(a) as:

All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana.

Under La. R.S. 44:4(16), the Public Records Law does not apply:

To the following records of a board or institution of higher learning, in accordance with rules and regulations promulgated by the Board of Supervisors for the University of Louisiana System, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, and the Board of Supervisors of Southern University and Agricultural and Mechanical College, or their successors, in conjunction with the Board of Regents, for programs and institutions under their supervision and management, unless access to the records is specifically required by state or federal statute or is ordered by a court under rules of discovery:

(a) Trade secrets and commercial or financial information obtained from a person, firm, or corporation, pertaining to research or to the commercialization of technology, including any such information designated as confidential by such person, firm, or corporation, but not including any such information relating to the identity of principals, officers, or individuals and entities directly or indirectly owning or

---

[5] A "custodian" is defined in the Public Records Law as the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records. La. R.S. 44:1(A)(3).

10

controlling an entity other than a publicly held entity, or the identity of principals, officers, or individuals and entities directly owning or controlling five percent or more of a publicly held entity.

Under the Public Records Law, the custodian shall present any public record to any person of the age of majority who so requests. La. R.S. 44:32. The mere fact that the public record requested may contain nonpublic material is not a valid reason for restricting access to that record. *Times Picayune Pub. Corp. v. Board of Supervisors of Louisiana State University*, 2002-2551, p. 8 (La.App. 1 Cir. 5/9/03), 845 So.2d 599, 605-06, *writ denied*, 2003-1589 (La. 9/5/03), 852 So.2d 1044. A claim of undue burden or expense is not enough to overcome the public's right of access to public records. *Stevens*, 2017-0959 at p. 5, 264 So.3d at 462. Although the examination of public records or requests for reproduction cannot be so burdensome as to interfere with the operation of the custodian's constitutional and legal duties, any restriction or limitation imposed by the custodian places the burden on the custodian to justify the restriction or limitation. La. R.S. 44:31(B)(3); *Elliott v. District Attorney of Baton Rouge*, 1994-1804, p. 7 (La.App. 1 Cir. 9/14/95), 664 So.2d 122, 126, *writ denied*, 1995-2509 (La. 12/15/95), 664 So.2d 440.

The custodian has a duty to segregate public records from other records. La. R.S. 44:32(B) and 33(A)(1); *Vandenweghe v. Parish of Jefferson*, 11-52, p. 10 (La.App. 5 Cir. 5/24/11), 70 So.3d 51, 58, *writ denied*, 2011-1333 (La. 9/30/11), 71 So.3d 289. Those portions deemed nonpublic must be separated prior to the public release of the record. *Vandenweghe*, 11-52 at p. 11, 70 So.3d at 58, citing La. R.S. 44:32. While the requested public record generally must be made available "immediately," the law recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. *Roper v. City of Baton Rouge/Parish of*

*East Baton Rouge*, 2016-1025, pp. 10-11 (La.App. 1 Cir. 3/15/18), 244 So.3d 450, 459, *writ denied*, 2018-0854 (La. 9/28/18), 252 So.3d 926. See also La. R.S. 44:33(A)[6] & (B)(1)[7]; La. R.S. 44:35(A)[8]. Within five business days of the request, however, the custodian must provide a written "estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request." La. R.S. 44:35(A). If the custodian fails to provide that notice, the requesting party may institute proceedings for the issuance of a writ of mandamus, injunctive relief, or declaratory relief. *Id.*

### *Unduly Burdensome or Expensive*

In their first assignment of error, LSU and Alexander argued that the trial court erred in ordering the production of documents that were "unduly burdensome and expensive in violation of La. R.S. 44:33(A)(2)."

As noted above, a claim of undue burden or expense is not enough to overcome the public's right of access to public records; it is only where the request is so burdensome that it interferes with the custodian's constitutional and legal duties that the public's right to access the records may be restricted. *Elliott*, 1994-1804 at p. 7, 664 So.2d at 126. The burden of proof to justify any restriction or limitation on the public's right to access a public record is on the custodian. La. R.S. 44:31(B)(3).

---

[6] When a request is made for a public record to which the public is entitled, the official who has responsibility for the record shall have the record segregated from other records under his custody so that the public can reasonably view the record. La. R.S. 44:33(A)(1). However, if segregating the record would be unreasonably burdensome or expensive, then the custodian must state this in writing and state the location of the requested record. La. R.S. 44:33(A)(2).

[7] If the public record requested is immediately available, because of its not being in active use at the time of the request, the public record shall be produced immediately. If the public record requested is not immediately available, because of its being in active use at the time of the request, the custodian shall promptly certify this in writing to the applicant, and in his certificate shall fix a day and hour within three days, exclusive of Saturdays, Sundays, and legal public holidays, for the exercise of the right granted by the Public Records Law. La. R.S. 44:33(B)(1).

[8] Any person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the provisions of the Public Records Law, either by a determination of the custodian or by the passage of five days, exclusive of Saturdays, Sundays, and legal public holidays, from the date of his in-person, written, or electronic request without receiving a determination in writing by the custodian or an estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request, may institute proceedings for the issuance of a writ of mandamus or injunctive or declaratory relief, together with attorney fees, costs, and damages. La. R.S. 44:35(A).

We note that LSU forwarded Krielow's public records request to BASF and sought BASF's assistance in identifying those portions of the responsive records that might qualify under Louisiana law for redaction. Counsel for LSU admitted that he did not review the unredacted documents prior to their redaction by BASF, so he had no idea what had been removed from the documents. It is the custodian's duty, not the duty of a third party, to determine whether information is in fact proprietary or trade secret information. See. La. R.S. 44:3.2 (D)(1). Because of LSU's failure to properly perform their duty as custodian of the record, Krielow had to incur additional time and expense to recover public information he was legally entitled to receive.

After a thorough review of the record, we cannot say that the trial court erred in concluding that LSU did not satisfy their burden of proving it was justified in restricting the public's right to access a public record.

*Attorney Fee Award*

In their second assignment of error, LSU and Alexander argued that the trial court erred in awarding Krielow attorney fees and costs under La. R.S. 44:35(D), since LSU did not act arbitrarily or capriciously.

At the time of the public records requests at issue herein, Louisiana Revised Statutes 44:35(D) provided that if the person seeking the right to inspect, copy, or reproduce a public record or to receive or obtain a copy or reproduction of a public record prevails in his enforcement suit, the court shall award him reasonable attorney fees and other litigation costs, and *"[i]f such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof."* (emphasis added).[9] A plaintiff may also be entitled to actual damages and civil penalties, pursuant to La. R.S. 44:35(E)(1), when the custodian acted arbitrarily or capriciously. However, there is no requirement of arbitrary or

---

[9] Louisiana Revised Statutes 44:35(D) was subsequently amended by Acts 2018, No. 394, § 1.

capricious behavior in order for attorney fees to be awarded under La. R.S. 44:35(D).

LSU also argues that it should not have been ordered to pay Krielow's attorney fees because it produced "several thousand records to Plaintiff before Plaintiff filed suit." Regardless of LSU's initial production of records, the fact remains that LSU denied Krielow access to certain public records. That LSU did so based on an erroneous belief that the records were exempt from production or an incorrect belief that the request could be denied under La. R.S. 44:33(A)(2) is of no consequence. This court has held that where requested documents are eventually produced following the request for a writ of mandamus, the writ of mandamus may be rendered moot, however, an award of attorney fees is still permissible under La. R.S. 44:35(D) if the production occurred after suit was filed. *Roper*, 2016-1025 at p. 28, 244 So.3d 450, 469 (finding that, although some records were provided or made available before suit was filed, additional records were provided after suit was filed; thus, an award of attorney fees was still available under the statute).

Because Krielow prevailed on some, but not all, of his claim, an award of attorney fees was discretionary with the trial court under La. R.S. 44:35(D). Appellate review of such discretionary decisions is conducted under the "abuse of discretion" standard of review. *Quality Environmental Processes, Inc. v. IP Petroleum Company, Inc.*, 2016-0230, p. 22 (La.App. 1 Cir. 4/12/17), 219 So.3d 349, 375, *writ denied*, 2017-00915 (La. 10/9/17), 227 So.3d 833. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. *Id.*

In this case, because LSU improperly denied Krielow access to some of the documents requested, he has prevailed in part in his mandamus action. Based on our review of the record before us, we find no abuse of discretion in the trial court's

award of attorney fees and costs under La. R.S. 44:35(D). See *Maldonado v. Cannizzaro*, 2018-0177, pp. 11-12 (La.App. 4 Cir. 10/10/18), 257 So.3d 733, 742, *writ denied*, 2018-1749 (La. 1/8/19), 260 So.3d 591.

LSU and Alexander's final assignment of error is that the amount of the trial court's attorney fee award was unreasonable.

Rule 1.5 of the Louisiana Rules of Professional Conduct provides the following factors to be considered by the court in setting reasonable attorney fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The record on appeal contains Krielow's attorney's billing statements and an affidavit attesting to the time spent on the case and his hourly rate. LSU's argument that the award was unreasonable is simply that the award is higher than awards in other, more egregious cases. However, the trial court concluded, and we agree, that the amount of attorney fees requested was reasonable under the circumstances. As noted above, the trial court has discretion to award a plaintiff who has prevailed only in part "reasonable attorney fees or an appropriate portion thereof." There is no absolute requirement that the trial court reduce the award of

15

reasonable attorney fees based on a portion of the claim being unsuccessful. Based on the particular circumstances of this case, we cannot say that the trial court's award of $26,070.00 in attorney fees was an abuse of discretion or clearly wrong.

*Attorney Fees for Defending Appeal*

In his appellate brief, Krielow also requested additional attorney fees for defense of this appeal. An increase in attorney fees is usually awarded where a party who was awarded attorney fees by the trial court is forced to and successfully defends an appeal. *Aswell v. Division of Administration, State*, 2015-1851, p. 10 (La.App. 1 Cir. 6/3/16), 196 So.3d 90, 96. The award of additional attorney fees is to keep the appellate judgment consistent with the underlying judgment. *Maldonado*, 2018-0177 at p. 14, 257 So.3d at 743. Here, Krielow failed to follow the proper appellate procedure in submitting his request for an award of additional attorney fees, since he did not answer the appeal. See La. C.C.P. art. 2133; *Molinere v. Lapeyrouse*, 2016-0991, p. 17 (La.App. 1 Cir. 2/17/17), 214 So.3d 887, 898. Thus, he is not entitled to an increase in attorney fees for defending this appeal.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants, Louisiana State University Board of Supervisors and F. King Alexander.

**AFFIRMED.**